The next case is either ICHL or ICHL versus Sony and Lenovo, 2011-12-02. And it's just a hold when you're ready. Thank you, your honor. Two parts of one part. Either, your honor. May it please the court. My name is Eric Stahl. I represent ICHL. ICHL would be a funny word to have to say a lot, but ICHL is the client. This patent, at least six times in this patent, the invention is described as a heat sink that's configured with a split feed transverse flow configuration. It is described as the essential feature of the patent. All the other bells and whistles that may be added to this heat sink are fine, but the essential feature is a split feed transverse flow configuration. In contrast to this numerous, numerous descriptions of the patent, of the invention, Dr. Rappel of Caltech, the inventor, he does not spend one word throughout the patent describing the relative merits of a non-integral bond or an integral bond or anything about the way these parts of the heat sink need to be bonded together. That is simply not his concern. But we're reading the claim in light of the specification. And it refers to second surface for receiving fin structures, which implies that they're in separate structure, and they're bonded. And there's an epoxy glue to bond them. Isn't it pretty clear that they're separate structures until they are bonded together? Well, bonded itself is completely neutral as to whether they're separate structures or not. Bonded is the word, not bonding. And that's an important distinction. Both the district court and the appellees continually talk about bonding, which is a process. It's an action verb of humans bonding things together. Bonded, on the other hand, is a passive adjective. And it's a structural term. When you talk about bonded, you can talk about things in ordinary language. You talk about integral bonds. You talk about metallurgical bonds, molecular bonds. Bonded, as a passive adjective, is neutral as to whether or not the parts are physically separate. I mean, the question is whether or not the use of the term bonded here covers the chemical definition of bonding, or the molecular bonding, or whether it doesn't. And you said it as if it's true, and it's a proposition that we've all recognized and agreed to. That's not the case. Well, but the plain meaning of the ordinary language bonded is neutral. The question is. Again, you just repeated that. And I mean, you act as if that's a proposition with which no one can voice any agreement. And I guess you'll have to explain that one to me. Because bonded, at least in the engineering sense, is very much like what the district court construed it to be. You're then taking bonded in another context of chemistry or whatever, and you're coming up with someone else. That is a matter that's disputed, right? Well, it's certainly disputed about how bonded is applied in this patent. And the district court and the FLE say if you look at the description of the preferred embodiments, those descriptions call for a narrower definition of bonded than what might otherwise apply. Our position is that the word bonded by itself, before you look at the rest of the specification in the context, the starting point's got to be the ordinary meaning of the term itself. And that term itself, bonded, is a neutral term just because of the fact that we talk about integral and non integral bonds. The idea that the term bonded by itself, without looking at anything else, would arbitrarily exclude some type of bonds, but include other types of bonds, it's arbitrary. It's certainly possible that the rest of the specification may call for a more specific definition of bonded. But if the starting point is the ordinary meaning of the term itself, bonded should be neutral. An intimate contact with should be neutral because molecular contact is contact just as much. It is, in fact, more intimate than contact using intermediate glue. Obviously not chemical because we're not talking about chemicals. We're not talking about a benzene ring and a carboxyl group, which bonded means they are chemically bonded. There's nothing chemical here. These are physical items, and they're bonded with an epoxy glue. Well, for instance, in a dip brazed heat sink, let's say you've got a copper base and a copper fin structure. And you use, as a filler metal, you use a copper phosphorous alloy. The structure that is created through that dip brazing process, the only bond between them are metallurgical molecular bonds. It's copper to copper and phosphorous and copper. If you're looking at a snapshot of that product, the thing that is yielded through a dip brazing process, all you're going to see is metallurgical molecular bonds. Are you referring to anything specific in the specification? What are you referring to? Well, we're talking about dip brazing. Dip brazing in the abstract, when the inventor is talking. Are engineering definitions of bonding, in the engineering context, bonding is? You don't disagree that bonding is defined as the fastening together of two components of a device by means of adhesive. You don't disagree with that? Well, I agree that bonding is a process. Bonding is an action verb. Bonding is not. So you think in the engineering context, even though they define bonding as fastening together two components by means of adhesive, if they were looking at the word something that is bonded, they wouldn't apply the same fastening, something that has been fastened together, two components that have been fastened together. You don't think that would flow, necessarily? Not necessarily, because in an apparatus patent, you're talking about looking at the structure. Claim three, for instance, doesn't use the word bonded or bonding at all. Claim three talks about intimate contact with. Bonded is a passive structural term which describes the physical relationship between the heat sink structure and the heat sink base and the fin structures. Bonding is a process term. And the lesson of Vanguard products is that when you're looking at a structure like this, an apparatus patent, all that we should be concerned about is the physical structure that is yielded as a result of the physical structure of the product. It does not matter how that structure may have been created. So for instance, in this case, if you have a dip-brazed heat sink and all you have are molecular bonds, that suggests, I think conclusively, that any structure that relies on molecular bonds rather than a glue or an epoxy or some adhesive falls within the scope of the patent. If a dip-brazed heat sink with molecular bonds falls within the scope of the patent, then any structure which relies on a similar structural relationship, that snapshot, that structural relationship should be within the scope of this patent. Am I correct that this patent expired so we're talking about damages? We are talking about damage. That is right, Your Honor. Yeah, it expired in 2008, I believe. And the patent was obtained in the 1980s, which is part of the issue here. The discussion of the specification is talking about manufacturing technologies that existed in the 1980s. And we've got very smart lawyers on the defendant appellee side. They are trying to incorporate those discussions of manufacturing issues related to the 1980s to try to limit the scope of an apparatus patent, which is under Vanguard Products, just simply the wrong way to approach this from a claim construction point of view. Your Honor mentioned about the second surface for receiving. That is an internal claim within, internal language within Claim 3, which the district court and the appellee suggest requires separation. Not from Claim 1. And in Claim 1, you're right. That is right, Your Honor. And the interesting thing in the red brief by the appellees, they point out that a surface for receiving doesn't just exist in Claim 1, 2, and 3, talking about the relationship between the fin structures and the heat sink base. It also talks about the relationship between the heat sink base and the electrical component that is being cooled. And the conclusion they draw from that, this is on page 19 of their brief, footnote four. The conclusion they draw from that is if the electrical component is, if the first surface of the base is for receiving electrical component, well then clearly the electrical component cannot be integrally bonded to the heat sink. So therefore, internal evidence shows that integral bonds are excluded. The problem with that, the problem with their argument is if you look at Claim 7 of the patent, Claim 7 expressly says that we want to make a claim for electrical components that are integral parts of the heat sink. The inventor, you can say he's acting as his own lexicographer here, the inventor is saying there is nothing at all inconsistent with the idea, nothing at all inconsistent with the idea that an integral connection and, between an integral connection and receiving, in the patent, the inventor explains why a smaller heat sink, which is what this, his split D transverse flow configuration allows, that smaller heat sink allows the integration of the heat sink and the electrical component. That's actually one of the important advantages of his design is that he saw that potential. And when he's describing it both in the body of the specification and in Claim 7, he recognizes that there is no inherent structural difference, structural problem between a surface for receiving and an integral connection. Of course, Claim 7 refers to a planar member being an integral portion of said electrical component and that's dependent upon Claim 3, which is independent upon Claim 1, which has the language that we've been talking about. Well, the language in Claim 3, the language is also in Claim 3, it's the same language. Claim 3 talks about a planar member having a first surface for receiving a component to be cooled thereby. Is the planar member the top plate? It is, Claims 2 and Claim 3 have the same concepts, but they use consistently different terms. The top plate is for receiving fin structures and Claim 3, planar surface is for receiving a component. Is that the fin structures? No, the electrical component, the heat sink, so the planar member is the base of the heat sink. But Claim 7 isn't really that relevant to Claim 1 that we've been talking about. It is relevant certainly because it's the same language. For purposes of understanding what the patentee is meaning by these terms that he's using, it is certainly relevant because they're consistently used throughout the patent to show that receiving is not inconsistent with integral. Mr. Stoll, do you want to claim after you have reserved rebuttal time? I will, Your Honor, thank you. We will save it for you, Mr. Johnson. Thank you, Your Honor. May it please the Court. The District Court's order should be affirmed. This is unlike cases like Vanguard where we talk about process limitations or manufacturing processes being imported into the claims. Here we have specific claim language that when a person of ordinary skill in the art reads the claim language, which talks about a top plate having a first surface and a second surface for receiving the fin structures, and then talks about the fin structures each bonded to said second surface, that's telling a person of ordinary skill in the art that there is a structural component that are arranged in a certain way in this heat sink assembly. And a person of ordinary skill in the art would understand that the fin structures are separate and distinct from the top plate. That's the way the claim is written and that's the way a person of ordinary skill in the art would understand it. What's the significance of Claim 7? Claim 7 is directed to, frankly, something that's not really shown in the figures in the patent, but it talks about the, and Your Honor pointed out, planar member is an integral portion of said electrical component. It's not describing the connection between the fin structures and the top plate. It's talking about something completely different. And in fact, what it shows is that when the patentee wanted to use integral, he used integral. He knew what it meant. It means something that's different than bonded to, which is described in Claim 2. And integral, if you, just since you raised it, looking at figure in Columns 5 and Columns 6, Columns 6 lines 53 to 58 refers to, talking about Figure 6, the primary structure which supports the serpentine fins utilizes both a top plate suitable for receiving a component thereon and a series of integral vertically extending fin support. And those are different than the fin structures. Those are the fingers that are made of the single material with the top plate to which the fin material may be bonded at a regular interval. A person of ordinary skill in the art reading this patent spec would understand that integral and bonded mean two separate things. Bonded, as Your Honor pointed out, means in this context, and this is a mechanical patent. It's not a chemical. His point is that they can mean the same thing. The question is, what is integral with what? In this instance, bonded means affixing two things together. And whether it's in the context of glue or an adhesive or frankly, with respect to dip brazing, even the- What about this point that there's a difference between bonding and bonded? Bonded here, the language says bonded to the second surface. So frankly, I disagree that it's a passive adjective I think Mr. Stahl described it as. This is a verb, it's bonded to the second surface. So what's bonded to the second surface? The fin structures are bonded. They're two distinct features. They're not, the fin structures are not, you don't bond yourself as the district court and magistrate judge pointed out. You can't have contact within a solid object. You don't bond yourself. My hand is not bonded necessarily to my arm. Where do you draw the distinctions along those lines? We're talking about the Stairmaster case, for example, Your Honor, is a case that we cite in our briefs and we think is on all squares here because in that case, the language was engaged with. And in that case, the district court found that reaching beyond, looking at the specification, looking at the claim language, a flywheel and a hub that was made of one piece of material was not engaged with itself, could not engage itself. And that's very similar to the language that we have here. And the Stairmaster case came out of Delaware. The underlying district court opinion is 25 F sub 2nd 270 and it was affirmed by this court 232 F third 909. So bonded has no special meaning here. It means a union or cohesion between parts to join securely as with glue. That's a dictionary definition that we cite from the American Heritage Dictionary and Joint Appendix page 52. And- Well, we don't need to rely on cases of dictionaries here. We just need to read the claim of respect. That's exactly right. That's exactly right. So just to go back to the spec for a minute, because we think the claim language in and of itself informs a person of ordinary skill how these fin structures are arranged. But the specification, if there's any doubt, confirms those constructions. And if we start with the object, one of the objects of the invention is listed at column three lines 38 to about 44. It says, an additional object of the present invention to provide an improved high efficiency forced air heat sink having a novel split feed transverse flow configuration, having optimal selected fin spacing and thickness in a mechanically stable configuration. What about brazing? Brazing or dip brazing? Brazing. Well, maybe it's dip brazing, but his argument is that brazing implies they can be together in one form. There's, first, dip brazing is mentioned once in the patent. It's in the last sentence of the abstract. And there it says, it's talking about it in the context of another. Yeah, it is dip brazing. Another potential thermal, high thermal conductivity bondent. Dip brazing is the process, again, it's like it's akin to soldering. And the definitions that ICHL cites on page six of its brief point out that it's the joining of parts. It's like dip brazing takes two separate parts. So you're saying it helps you rather than him. Helps, it helps us. It's putting an adhesive in the middle and the adhesive, whatever it is, if it's an alloy or a filler material has a lower melting point than the two metals that you're trying to attach, that assembly is then dipped in some sort of flux or molten salt and the filler material melts. At the end of the process, if you, there's no melting between the one piece and the second piece. It's the filler material that melts. And if at the end of the day, you wanted to pull those pieces apart, you could melt them again and you'd have those same two pieces. In other words, it's still required to have separate structures. That's exactly right. And that's why your honor, dip brazing is covered by the claims of the language. It's the claims are written from the standpoint of the heat assembly requiring these separate pieces be put together. And it makes sense because when the patent was written, it talks about thin thickness being one of the primary issues and that extruded heat assembly did not achieve the mechanical stability that these other thin, the not allegedly novel heat assembly here did. So we're not talking about the manufacturing process of an extruded heat sink. We're talking about the actual heat sink as it exists. An extruded heat sink sitting on the table here would not have the mechanical stability, would not have the proper thin thickness that the inventor had in mind when the patent was written. And the claims in and of themselves combined with the specification confirm the district court's construction. And I'm happy to talk a little bit more about dip brazing if there are any further questions about it. And if there are any other questions, otherwise I will concede my time. Thank you. Mr. Johnson, Mr. Stahl has some rebuttal time. Thank you. Mr. Johnson commits the same fallacy that is repeats throughout this case. He talks about dip brazing being comparable to using a glue because it involves the joining together of two parts. Joining, like bonding, is a process. It is certainly true that dip brazing as a process involves joining together two parts. No one's disputing that. But what's relevant for an apparatus patent is look at the structure that is yielded by that process. Once you look at the structure, it does not matter what process may have been used to create that structure. In this case, the dip brazed structure relies entirely on metallurgical bonds. The example I gave before is you've got, you're joining two pieces of copper and you use a copper alloy as your filler metal. That's commonly how dip brazing works. The dip just has, there are lots of methods to create the heat. Dip brazing happens to involve using a dip bath. But that structure that is yielded through dip brazing is purely based on metallurgical bonds. And the point is, is that in the abstract, in the detailed description of the invention, the inventor says that for his particular reduction of his invention to practice, he used a thermally conductive bond and epoxy. The point is, is that that use of an epoxy had nothing to do with the novelty or the essential goals of the invention. And so in the abstract, what he says is, if you want to, when you're constructing one of these things, you may, uses the word may not shall, may use a thermally conductive bondant. You may also use other means. And that's when he talks about dip brazing or soldering. The point there is dip brazing, a purely metallurgical bond that does not involve the use of an external bondant is contemplated here as a viable means of creating a patented structure. We also know that receiving does not, is not inconsistent with an integral bond. All of these things point to the fact that throughout this patent, this inventor is not at all concerned, not at all concerned about the nature of the bond. The nature of the connection has nothing to do with the invention. And so unless the expressed terms of the claim language themselves require physical separation, it should not be inferred from any of the discussion about the preferred embodiments. And the claims of the language themselves are broad in a passive sense. In a passive sense, as these terms must be construed, it includes integrally bonded heat sinks. And so the Merkman order was wrong to exclude those. Thank you, Your Honor. Thank you, Mr. Stahl. We have your position to take the case for an advisory.